ALBANY,
August, 1816.

JACKSON
v.
RICHTMYER.

JACKSON, *ex dem.* KLOCK AND OTHERS, *against* RICHTMYER. (a)

THIS was an action of ejectment, to recover part of lot No. 4, in the sixth allotment of a tract of land, in the town of *Minden*, and county of *Montgomery*; granted by letters patent, dated the 13th of *November*, 1731, to *Abraham Van Horne, William Prevost, Philip Livingston,* and *Mary Burnet.* The cause was tried before Mr. J. *Platt*, at the *Montgomery* circuit, in *August*, 1813.

At the trial, the plaintiff gave in evidence an exemplification of the letters patent to *Van Horne and others*, for 8,000 acres of land; also, a release from *William Prevost*, one of the patentees to *Philip Livingston*, another of the patentees, dated the 1st of *November*, 1734, of his undivided fourth part of the 8,000 acres, or tract described in the patent. *Philip Livingston*, by his will, dated the 15th of *July*, 1748, devised his interest in the tract of 8,000 acres to *John Livingston and others*, who, by deed dated the 3d of *February*, 1761, conveyed to *George Klock* and *Jellis Fonda*, in fee, an undivided moiety of the land contained in the patent, except 1,000 acres conveyed to *David Schuyler.* The plaintiff further gave in evidence, a deed from *David* and *Samuel Van Horne*, heirs at law of *Abraham Van Horne*, the patentee, dated the 3d of *February*, 1761, to *Jellis Fonda* and *George Klock*, of an undivided fourth part of the lands in the patent, except 500 acres conveyed to *David Schuyler.* It was admitted that *George Klock* died in 1787, and that the lessors of the plaintiff are his heirs at law; and that the defendant was in possession of part of lot No. 4, in the sixth allotment of the above-mentioned tract.

The defendant then gave in evidence, a release dated the 22d of *November*, 1763, of the sixth allotment, from *Philip Livingston, William Livingston, Walter Rutherford, John Duncan,* and *William Burnet Brown*, styling themselves part owners of the land in the said patent, to three *Indians*, and their heirs, in trust for themselves and all the rest of the native *Indians* belonging to the *Canajoharie Castle*, and their heirs, for ever. The defendant

*Where a partition was made in 1764, under the colonial act of 1762, and on the trial, in 1813, the map and field-book which had been filed pursuant to the directions of that act, were produced in evidence, but the ballotting book could not be found; it was held, that after such a lapse of time, and the act of the parties recognising the partition, it would not be invalidated on account of the want of the balloting book. And an agreement relating to the partition, executed by a third person in the name of one of the parties, who it did not appear had any authority to execute it, was held to be ratified by the subsequent acts of the party in whose name it was made.*

*Where a person who recovers in an action of ejectment takes possession, and conveys the land to a third person, for a valuable consideration, who enters, such entry and possession afford strong prima facie evidence of right.*

(a) This cause was decided in *May* term last, but was unavoidably omitted to be inserted among the cases of that term.

next gave in evidence a bill of discovery, filed in chancery by *John Lansing,* jun., and others, including the present defendant, against the lessors of the plaintiff, and their answers thereto. *Jacob G.* & *George G. Klock,* two of the lessors, in their answer, admit, that lands of certain *Indians* of the *Mohawk* tribe, were included in the sixth allotment of the said patent, and that the *Indians* were greatly discontented on account of this grant; but they deny that their father, *George Klock,* at any time, ever assented to the release to those *Indians,* but refused to execute it. They admit, that proceedings, in partition, were had some time about the year 1764, and that *Isaac Vroman, Rynier Mynderse,* and *Joseph R. Yates,* were appointed commissioners for that purpose, who divided the tract into six allotments, and distinguished them numerically, and completed the map and field-book on, or about, the 9th of *October,* 1764. The defendants say, that they are ignorant from what motives or opinions the commissioners acted, nor do they believe that any particular instructions were given by the proprietors of the patent, or by any of them, to the commissioners, to proceed to a subdivision of the sixth allotment, differing from those given for the partition of the other parts of the tract; but believe that they proceeded to a subdivision of the sixth allotment only from motives of duty. They admit, that a draft of the lots, into which the sixth allotment was subdivided, was duly made by the commissioners; and that, on such drawing, lot No. 1., in the said sixth allotment, was drawn to the share of the patentee, *Philip Livingston;* lot No. 2. to the share of the patentee, *Abraham Van Horne;* No. 3. to the share of the patentee, *Mary Burnet;* and No. 4. to the share of the other patentee, *William Prevost.* They deny that lot No. 1. was assigned to their ancestor, *George Klock,* as his full portion in the sixth allotment; but, that the opposition of the native *Indians* having ceased, *Jellis Fonda* and *George Klock* took possession of lot No. 1., as part of their share in the sixth allotment; and, in conformity to an adjustment between themselves, *George Klock* released to *Jellis Fonda,* one fourth of lot No. 1., and *Fonda* released to *Klock,* three fourths; and *Klock* having possessed himself of lot No. 1., sold and conveyed his three fourths thereof to *Johannes Luke.* They admit, that the *Indians* continued on the land until 1779; and that, after they removed, some of the tenants, and others, residing on the lands, at the request of the defendants, entered

into some agreements in writing for leases to be given when-
ever the defendants should obtain a patent for the land, or have
their titles confirmed by the state; and they say that the reason
of the last-mentioned stipulation in the agreement, was, because
they were ignorant of the extent of their rights in the sixth al-
lotment. They say that they have heard, but whether true or
not they are unable to tell, that *Jellis Fonda* did obtain an instru-
ment, or deed, (dated, as charged in the bill, the 6th *July*, 1789,)
from some of the *Indians* of the *Upper Mohawk Castle*, for the
sixth allotment, which instrument they insist to be invalid.
They admit that *Jellis Fonda*, and the following persons, to
each of whom, as was charged in the bill, *Fonda* conveyed an
undivided fifth part, *John Lansing*, jun., *Abraham Van Vechten*,
*Abraham G. Lansing*, and *Christopher P. Yates*, commenced
actions of ejectment against them, and recovered possession,
of which suits the defendants had notice, but judgment was ob-
tained by default therein, by the negligence of the attorney.
The defendants say, that they claim, in the ejectment suits now
pending, the half of lots No. 2. and 4. in the sixth allotment,
and admit that their father, *George Klock*, was a party to the
partition before mentioned. They state, that no part of the
1,000 acres excepted in the deed from the devisees of *Philip Liv-
ingston* to *Fonda & Klock*, and the 500 acres excepted in the
deed from *Abraham Van Horne*, were contained in the sixth
allotment. From the field-book of the partition referred to in
the answer, it appeared that the first, second, third, and fourth al-
lotments, were subdivided into eight lots each, and the fifth and
sixth allotments into four lots each; that on the balloting, lots
No. 1. and 2. of the first allotment, lots No. 1. and 8. of the se-
cond allotment, No. 1. and 5. in the third allotment, No. 1. and
3. in the fourth allotment, No. 3. in the fifth allotment, and No.
1. in the sixth allotment, fell to the share of *Philip Livingston*.
Lots No. 3. and 7. in the first allotment, No. 3. and 4. in the
second allotment, No. 2. and 3. in the third allotment, No. 2.
and 6. in the fourth allotment, No. 2. in the the fifth allotment,
and No. 4. in the sixth allotment, fell to the share of *William Pre-
vost*. Lots No. 4. and 8. in the first allotment, lots No. 1. and 2.
in the second allotment, No. 6. and 8. in the third allotment, No.
4. and 7. in the fourth allotment, and No. 2. in the sixth allot-
ment, fell to the share of *Abraham Van Horne*. Lots No. 5.
and 6. in the first allotment, No. 5. and 6. in the second allot-

ment, No. 4. and 7. in the third allotment, No. 5. and 8. in the fourth allotment, No. 4. in the fifth allotment, and No. 3. in the sixth allotment, fell to the share of *Mary Burnet.*

The answer in chancery of other of the lessors of the plaintiff, was read, containing the same allegations as the answer of *Jacob G.* and *George G. Klock,* and further insisting that there had been no subdivision of the sixth allotment, previous to the revolutionary war, except on paper, and that, subsequent to the war, only lot No. 1. had been run out, by actual survey.

The defendants gave in evidence a release from *George Klock,* to *Jellis Fonda,* dated the 27th of *February,* 1767, by which he released to him his interest in certain lots in the patent, among which was lot No. 1. of the sixth allotment, describing the lands, as having been divided and laid into lots, in *September,* 1764; by *Isaac Vroman,* Esq. one of the commissioners appointed to make partition, as appeared by his map and field-book, filed in the clerk's office of the county of *Albany.* Also, an agreement dated the 26th of *January,* 1763, between *George Klock,* of the one part, and *John Duncan* and *Walter Rutherford,* of the other, that *Klock* should convey to *Duncan* and *Rutherford,* one half of all his share in the *Canajoharie* patent, which he bought in company with *Jellis Fonda,* at the same rate, and with the same warranty it was conveyed to him.

The defendant further gave in evidence the following agreement; "the proprietors in the *Canajoharie* patent having agreed to divide the said patent amongst them into patentees' shares, the following persons met at *New-York,* the 27th day of *November,* in the year 1764, to wit: *Jacob G. Klock,* in behalf of his father, *George Klock, Isaac Vroman,* in behalf of *Jellis Fonda,* the first holding three fourths, and the other one fourth of patentees' shares, *Philip Livingston,* who holds three eighths of a share, *Isaac Vroman* for *John Duncan,* who holds five eighths of a share; *William Livingston,* who holds three eighths of a share, and *Walter Rutherford,* who holds five eighths of a share. They accordingly, drew for the different shares, when *Philip Livingston,* and *John Duncan,* drew the patentee share that belonged to *Abraham Van Horne. William Livingston,* and *Walter Rutherford,* the share that belonged to *W. Prevost;* and *George Klock,* and *Jellis Fonda,* the share that belonged to *Philip Livingston.* They have, accordingly,

ALBANY,
August, 1816.

JACKSON
v.
RICHTMYER.

'agreed, that whatever lands shall be drawn by the commissioners to the patentee rights above mentioned shall belong to, and be the property of, the subscribers, in the shares above specified, and mutually agree to sign releases accordingly." This agreement was signed with the other parties by "*Jacob G. Klock* for *George Klock.*"

· The original map and field-book of the partition were produced in evidence, and it was proved that neither the balloting book, nor any other papers relating to the partition, could be found in the proper offices. By the map and field-book it appeared that partition of the tract was made by *Isaac Vroman, Rynier Mynderse,* and *Joseph R. Yates,* commissioners appointed by virtue of the act of the late colony of *New-York,* passed *January* 3d, 1762, and that the map and field-book had been filed, as the law required, on the 9th of *October,* 1764, and that, by the partition, the tract was, pursuant to the directions of the act, divided into six allotments, and each of those allotments subdivided into four or eight lots, the sixth allotment being subdivided into four lots, each containing 850 acres, and numerically distinguished in such map and field-book from one progressively; and that the whole of the tract was balloted for to the patentees named in the patent. It was thereupon admitted, on the part of the plaintiff, that No. 1. of the sixth allotment, was drawn as and for the share of *Philip Livingston,* and No. 3. of the same allotment, as and for the share of *Mary Burnet,* to which latter lot the plaintiff disclaimed all title; and also admitted that all the lots drawn on the ballot to the share of the patentee, *Philip Livingston,* were held under title derived from *Klock* and *Fonda.*

The defendant then gave in evidence a release from *William Burnet Brown,* describing him as the son and heir of *Mary Burnet,* to *Adam Garlock, Solomon Moyer,* and *John Pickard,* (who, or persons claiming under whom, still had possession,) dated 19th of *April,* 1765; for the lots drawn to the share of *Mary Burnet,* in the five first allotments; also, a partition deed between the last-named grantees, dated *October* 24th, 1766; and a release from *John Duncan,* and *Walter Rutherford,* to *Jellis Fonda,* dated 28th of *June,* 1765, which recited that *George Klock* and *Jellis Fonda* were seised of an undivided sixth eighth part of the lands contained in the said patent, as tenants in common, and that *Jellis Fonda,* being so seised, conveyed an

undivided moiety of his share to *Philip Livingston*, of the city of *New-York*, merchant, and *William Livingston*, of the same place, attorney at law, and the other moiety to *Walter Rutherford*, and *John Duncan*; that partition of the tract was made in 1764, and that it was agreed, by the owners of the patent, or their attorneys, in the presence of the commissioners, before the allotment of the land, that the part and shares thereunder described for *Jellis Fonda* should fall in with the part and share of lots drawn for *Jellis Fonda* and *George Klock*, and then conveyed to the said *Jellis*, in fee, in his actual possession then being, by virtue of a bargain and sale, for one year, bearing date the preceding day; and by force of the statute of uses, one full third part of all that land conveyed to *Walter Rutherford* and *John Duncan*, by *Jellis Fonda*, lying partly in lots No. 1. and 2. of the first allotment, partly in lots No. 7. and 8. of the second allotment, partly in lots No. 1. and 5. of the third allotment, partly in lots No. 1. and 3. of the fourth allotment, and partly in lot No. 3. of the fifth allotment, all which lots were drawn in behalf of the said *Jellis Fonda*, and *George Klock*.

The defendant also gave in evidence, a contract under the hands and seals of *Jacob G. Klock*, one of the lessors of the plaintiff, and *Moses* and *Abraham Van Campen*, dated the 17th of *March*, 1788, by which the former agreed to sell the latter, No. 1. of the fourth allotment of the said patent, in fee. Also, a conveyance, in fee, from *George Klock* to *Johannes Luke*, dated the 21st of *July*, 1784, for his three fourths of lot No. 1. in the fourth allotment. Also, a partition deed between *Jellis Fonda*, *John Lansing*, jun. *Abraham G. Lansing*, *Christopher P. Yates*, and *Abraham Van Vechten*, of the whole sixth allotment, except lot No. 1., dated the 1st of *September*, 1790. Also, the will of *Jellis Fonda*, dated the 27th of *May*, 1791, empowering his executors to sell and convey his real estate; and a conveyance from the executors to the defendant and *John Richtmyer*, dated the 9th of *May*, 1792, for 100 acres of land released to *Fonda* in the sixth allotment, pursuant to the partition of 1790, being the premises in question. Also, two agreements executed by the lessors, *Jacob G. Klock* and *George G. Klock*, the one to *David A. Schuyler*, dated the 10th of *January*, 1791, and the other to *Robert Gardner*, dated the 29th of *September*, 1790, by which they promised to give leases of two parcels of land in the sixth allotment, when they should obtain a title or confirmation from the state.

Parol evidence was also offered by the defendant, further to show a possession, in conformity to the original partition of the patent, and by the lessors of the plaintiff to show a possessory title in themselves. The jury, under the direction of the judge, found a verdict for the plaintiff, for three eighths of the premises, subject to the opinion of the court, on a case containing the above facts.

The cause was argued by *Kirkland* and *Woodworth*, for the plaintiff, and by *Van Vechten* and *Henry*, for the defendant; but as the argument related principally to the evidence of title and possession, and the points are fully discussed in the judgment delivered by the court, it is thought unnecessary to state the arguments of the counsel.

VAN NESS, J., delivered the opinion of the court. The lessors of the plaintiff having deduced a title to an undivided portion of the lands granted to *Van Horne* and others, by the letters patent of 1763, are entitled to recover, unless a valid partition has been made of these lands among the proprietors; and the principal question presented by the case is, whether sufficient evidence of such partition has been shown on the part of defendant? It seems to be admitted that a partition has been duly made of all the lands described in the letters patent, except those contained in the sixth allotment, comprehending the premises in question; but it is argued that this allotment is still to be considered as undivided. I am at a loss to discover any solid ground for this distinction. The partition was made under the colonial act of 1762, and all the proceedings to establish a perfect partition under that act have been produced, except the ballot book, which cannot, at this day, be found. From the proceedings that have been discovered, and which are set forth in the case, the commissioners, as well as the parties, evidently intended to divide the whole patent; and that they did so divide it, is expressly set forth in their field-book and map; and there is not a single fact or circumstance, that I have been able to discover, showing that the sixth allotment was not as much the subject of partition as any of the other allotments. That allotment, as well as the other five, was laid out into lots, and upon the balloting, No. 1. was drawn to the share of the patentee, *Philip Livingston*, No. 2. to that of *Abraham Van Horne*, No. 3. to

that of *Mary Burnet*, and No. 4. (comprehending the premises in question) to that of *William Prevost.* After the commission- ers had laid out the whole tract into six allotments, and sub- divided the four first allotments into eight lots, and the remain- ing two into four lots, the parties to the partition met at the city of *New-York*, to proceed to a ballot pursuant to the act. By a written agreement between the proprietors, and the par- ties to the partition, on that occasion, dated the 27th of *Novem- ber*, 1764, it appears that their respective interests were ascer- tained and settled as follows, to wit: *George Klock*, and *Jellis Fonda*, owned *one of the patentees' shares*, (*Klock* three fourths, and *Fonda* one fourth thereof,) *Philip Livingston* three eighths of a share, *John Duncan* five eighths, *William Livingston* three eighths, *W. Rutherford* five eighths, making three fourths of the whole tract; *Mary Burnet*, or her heirs, holding the re- maining fourth. The proprietors having agreed "to divide the said patent amongst them, into patentee shares, they accord- ingly drew for the different shares, when *Philip Livingston* and *John Duncan* drew the patentee share that belonged to *Abraham Van Horne*, *William Livingston* and *W. Rutherford* the share that belonged to *William Prevost*, and *George Klock* and *Jellis Fonda the share* that belonged to *Philip Livingston*; and they accordingly agree, that whatever lands shall be drawn by the commissioners to the patentee rights above mentioned, shall belong to, and be the property of, the subscribers" (to the said agreement) "in the shares above specified, and mutually agree to sign releases accordingly." It was objected to this agree- ment, in the course of the argument, that there was no evidence to show that *Jacob G. Klock* was authorized to sign the agree- ment in behalf of his father, *George Klock*. It is true there is no express evidence of this fact, but that he was duly empow- ered to represent his father, is most satisfactorily proved by his subsequent ratifications of this act, to which I will presently ad- vert. By the map and field-book duly filed pursuant to the co- lonial partition act, it appears, that "partition of the said tract of land, granted by the letters patent aforesaid, was made by *I. Vroman*, *R. Mynderse*, and *Joseph R. Yates*, commissioners appointed by virtue of the act of the late colony of *New-York*, passed the 3d of *January*, 1762, and that the said map and field-book had been filed as the law required, on the 9th of *October*, 1764; and that by the said partition the said tract was,

ALBANY,
August 1816.

JACKSON
v
RICHTMYER.

pursuant to the directions of the said act, divided into six allot-
ments, and each of those allotments subdivided into four or eight
lots, and the said sixth allotment, each containing 850 acres, and
numerically distinguished in such map and field-book from No.
1. progressively ; and that the *whole of the said tract was balloted
for* to the patentees named in the said letters patent." It fur-
ther appears by the case that the plaintiff, at the trial, " admit-
ted that lot No. 1. of the sixth allotment, was drawn as and for
the share of the patentee, *Philip Livingston,* and lot No. 3. as
and for the share of the patentee, *Mary Burnet,* to which latter lot
the plaintiff disclaimed all title." It is thus clearly shown that
a partition, in fact, was made of the whole tract contained in the
letters patent; and that *George Klock* and *Jellis Fonda* owned,
at the time, but *one patentees' share,* being one fourth of the whole
tract; and I now proceed, as briefly as the subject will permit,
to show that, whatever imperfection may exist in the evidence
of a valid partition, under the colonial act, owing to the non-
production of the ballot-book, (if, indeed, any such imperfection
exists,) it is amply supplied by the subsequent acts of the par-
ties, and particularly by those of *George Klock.*

It was admitted at the trial, or is proved either by the answer
to the bill in chancery, or by other written or oral testimony, 1st.
That the lands in the first five allotments always have been,
and still continue to be, held according to this partition.

2d. That *all* the lots drawn on the said ballot, to the share of
the patentee, *Philip Livingston,* now are, and for a long time
have been, held under a title derived from *George Klock* and
*Jellis Fonda.*

3d. That *William Burnet Brown,* claiming to be heir at law
of *Mary Burnet,* ratified the partition by selling and conveying
to *Adam Garlock* and others, in 1765, and within a few months
after the partition was completed, " the lots drawn to the share
of the patentee, *Mary Burnet,* in the aforesaid partition, in the
five first allotments of said patent ;" and, that *Garlock* and his
co-grantees, the following year, made partition of these lots
among themselves, all of which have ever since been held
under a title derived from *Garlock* and his associates.

4th. That, in *April,* 1766, *George Klock* and *Jellis Fonda*
entered into a written agreement to divide all the lots drawn by
them on the general partition, and in strict and exact conformi-

ty thereto.    By this agreement, *George Klock* took, among other lots, precisely three fourths of lot No. 1. in the sixth allotment, and *Fonda* one fourth; and, at this time, no right or title to any other part of the sixth allotment was suggested, or pretended, by *George Klock*; nor, indeed, was any such claim made until after the time the *Indians* left it.

5th. That, on the 27th of *February*, 1767, *George Klock* carried the last-mentioned agreement into effect, by releasing to *Fonda*, his interest in the lots therein mentioned and designated; and describing the lands released *as having been divided and laid out into lots, in September,* 1764, *by Isaac Vroman, Esq., one of the commissioners, and the surveyor appointed to make partition of the land contained in the patent of Van Horne and others, as appears by his map and field-book, filed in the clerk's office, in the county of Albany.*

6th. That *George Klock*, in *July*, 1788, sold and conveyed three fourths of lot No. 1. in the sixth allotment, to *Johannes Luke*, under which deed it has been held ever since.    These are some of the many unequivocal acts by which the partition of 1764 is recognised and ratified, not only by *George Klock*, but by others of the parties to it.    Many more might be added, equally explicit and important, were it necessary.    From those which have been adverted to, the authority of *Jacob G. Klock*, to sign his father's name to the agreement of *November*, 1767, is placed beyond all doubt.    And it is equally clear, that *George Klock* not only admitted the validity of the partition of 1764, of the five first allotments, but, also, particularly that of the sixth allotment.    A partition thus made, acted upon, and ratified, and under which rights have been acquired by purchasers, from the parties to it, ought not now to be disturbed.    The court is bound to presume that every thing has been done, which was required to be done, to give it validity.    The partition, then, being fully proved and established, the lessors of the plaintiff must fail, inasmuch as the defendant has shown a subsisting title to be out of them; and it is, in this respect, chiefly, that the present case is distinguished from that of *Jackson*, ex dem. *Klock and another*, v. *Hudson*, (3 *Johns. Rep.* 375.)

The counsel for the plaintiff, however, claims, that the lessors of the plaintiff are entitled to recover upon their possessory title; and it, therefore, becomes necessary to say a few words in relation to that point.    The possession which has been at-

tempted to be shown, commenced some time after the revolutionary war. It was a mere naked entry, unaccompanied with any title, and, in fact, without the colour of title. It may well be doubted, whether this possession was of such a nature as would have conferred any right, even if it had endured twenty years, upon those who took it, or whether it would have taken away any right from the true owner. Within twenty years, however, an action of ejectment was commenced against the persons then in possession, under some of the heirs of *George Klock;* and the lessors of the plaintiff, in that action, having obtained a judgment by default, turned the possessors out, and entered into possession under a *hab. fac. possessionem.* The defendant is a *bona fide* purchaser, for a valuable consideration, from the persons who thus obtained possession under that judgment. Although it is true, as was said by this court in the case of *Jackson,* ex dem. *Wright and others,* v. *Deiffendorf & Zoller,* (3 *Johns. Rep.* 269.,) that no right is definitively determined by a judgment in ejectment; yet, it is equally true, that when a party enters under such a judgment, and then conveys to a third person for a valuable consideration, who enters under his deed, that such an entry and possession afford as high and solemn *prima facie* evidence of right as can well be exhibited; and higher and better evidence of title than the mere naked occupancy of these lands, indisputably belonging to other persons, by the representatives of *George Klock.* The lessors of the plaintiff, in their answer to the bill in chancery, do not put their right to recover upon the ground of possession. They rely, exclusively, upon the title which they claim to be vested in them, under the letters patent, and that title having failed, they are not entitled to recover at all.

SPENCER, J., having been formerly concerned for the lessors of the plaintiff, in a suit relative to the same title, did not sit to hear the argument, and gave no opinion in the cause.

Judgment for the defendant.